UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY QUARANTA, | ) | Circuit Court of |
| | ) | Cook County, Illinois |
| Plaintiffs, | ) | Case No. 08 CH 19043 |
| | ) | |
| | ) | 08 C 3807 |
| v. | ) | |
| | ) | Judge Gettleman |
| BAYVIEW LOAN SERVICING LLC, | ) | Magistrate Judge Cox |
| | ) | |
| Defendant. | ) | |

## ANSWER TO COMPLAINT

Now comes Defendant, Bayview Loan Servicing LLC ("Bayview"), by its

attorneys Michael J. Weik and Smith & Weik LLC, and in response to Plaintiff's

Complaint, states as follows.

## COUNT 1-REFORMATION OF THE NOTE AND MORTGAGE

## THE PARTIES

1.      At all times relevant herein, and specifically in 2007, Plaintiff was resident

of Cook County, Illinois.

ANSWER:      Bayview lacks sufficient knowledge or information to form a

belief as to the truth of the allegations contained in this paragraph.

2.      At all times relevant herein, and specifically in 2007, Defendant was a

corporation registered to do business in the State of Illinois and Defendant has been doing

business in Chicago, Cook County, Illinois.

ANSWER:      Bayview denies that it is a corporation.  Bayview admits that it is

registered to do business in Illinois and that it has done business in Chicago, Cook

County, Illinois.

3.     At all time relevant herein, and specifically in 2007, Metwest Commercial Lender, Inc. was an actual agent of Defendant for the purposes of advertising lending services, processing and preparing for closing various residential and commercial loans secured by mortgages on residential and commercial properties located in Cook County, Illinois.

ANSWER:     Bayview lacks sufficient knowledge and information as to what Plaintiff means by "actual agent" and otherwise denies the allegations of this paragraph as alleged.

4.     At all times relevant herein, and specifically in 2007, Metwest Commercial Lender, Inc. represented itself as an agent of Defendant, authorized by Defendant to advertise Defendant's lending services, process and prepare for closing various residential and commercial loans secured by mortgages on residential and commercial properties located in Cook County, Illinois.

ANSWER:     Bayview lacks sufficient knowledge and information to admit or deny allegations as to what Metwest Commercial Lender, Inc. may have represented itself to be and otherwise denies the allegations of this paragraph.

5.     At all times relevant herein, and specifically in 2007, Defendant had been aware that Metwest Commercial Lender, Inc. Represented itself as an agent of Defendant authorized by Defendant to advertise lending services, process and prepare for closing various residential and commercial loans secured by mortgages on residential and commercial properties located in Cook County, Illinois.

ANSWER:     Bayview denies the allegations of this paragraph as alleged.

6.    At all times relevant herein, and specifically in 2007, Defendant instructed Metwest Commercial Lender, Inc. to represent itself to Plaintiff and Plaintiff's agents as the entity authorized by Defendant to advertise lending services, process and prepare for closing various residential and commercial loans secured by mortgages on residential and commercial properties located in Cook County, Illinois

ANSWER:    Bayview denies the allegations of this paragraph as alleged.

7.    At all times relevant herein, and specifically in 2007, Defendant instructed Metwest Commercial Lender, Inc. to represent itself as an agent of Defendant authorized by Defendant to advertise lending services, process and preparing for closing various residential and commercial loans secured by mortgages on residential and commercial properties located in Cook County, Illinois.

ANSWER:    Bayview denies the allegations of this paragraph as alleged.

8.    At all times relevant herein, and specifically in 2007, Jeffrey Green, Jeff Lustbader, and Anthony Carrasco were employees and/or actually agents of Defendant and Metwest Commercial Lender, Inc. for the purposes of soliciting Plaintiff's business to process a loan to be funded by Defendant and to be secured by a mortgage on Plaintiff's property located at 6301 W. 73rd Street, Bedford Park IL 60636.

ANSWER:  Bayview denies that the individuals were the employees or agents of Bayview.  Bayview lacks sufficient knowledge and information to form a belief as to the truth of the allegations regarding whether they were employees or agents of Metwest. Bayview denies the remaining allegations of this paragraph as alleged.

9.    At all times relevant herein, and specifically in 2007, Raymond Dellovo was a commercial mortgage broker who, on behalf of Plaintiff, negotiated the terms and

conditions of the loan to be funded by Defendant to be secured by a mortgage on Plaintiff's property located at 6301 W. 73rd Street, Bedford Park IL 60636.

ANSWER:    Bayview is informed and believes that Dellovo is a commercial mortgage broker who acted for and on behalf of Plaintiff with regard to soliciting and obtaining the subject loan and therefore admits those allegations. Bayview denies that it funded the subject loan.  Otherwise, Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

10.    At all times relevant herein, and specifically in 2007. Stephen Dabrowski was Plaintiff's counsel and attorney in fact for the purposes of negotiating and closing the loan with Defendant secured by Plaintiff's property located at 6301 W. 73rd Street, Bedford Park IL 60636.

ANSWER:    Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

## PLAINTIFF'S CONTRACT FOR PURCHASE OF THE PROPERTY AND PRE-CLOSING COMMUNICATIONS WITH DEFENDANT

11.    On or about March 11, 2007, Plaintiff entered into a Real Estate contract to purchase the property at 6301 W. 73rd Street, Bedford Park IL 60636 for $2,050,000.00.

ANSWER:    Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.  Bayview is informed that the underlying loan transaction was one to purchase property.

12.    On or about March 2007, Plaintiff contacted Raymond Dellovo to assist with procuring a loan to finance the purchase.

4

ANSWER:    Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

13.    Raymond Dellovo, on behalf of Plaintiff, compiled, processed, negotiated and submitted the documents for the approval by Defendant of Plaintiff's loan application for a loan in the amount of $1,000,000.00 to finance the purchase of the Property located at 6301 W. 73rd Street, Bedford Park IL 60636.

ANSWER:    Bayview denies any documents were submitted to it for approval. Bayview is informed and believes that Dellovo did act for and on behalf of Plaintiff with regard to certain aspects of obtaining a loan.  Bayview otherwise lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph.

14.    In 2007 and at all times prior to the closing on July 2, 2007, Defendant's agents Jeffrey Green, Jeff Lustbader, and Anthony Carrasco, communicated numerous times by telephone, e-mail and by telecopy with Plaintiff, Plaintiff's agent and attorney – Stephen Dabrowski and with Plaintiff's broker-Raymond Dellovo regarding the material terms of Defendant's loan to Plaintiff.

ANSWER:    Bayview denies the allegation that the individuals identified were its agents.  Bayview lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of this paragraph.

15.    Prior to the closing, Defendant provided Plaintiff with disclosures and the terms and conditions of the proposed loan and Plaintiff agree to accept those at the closing by executing documents reflecting the agreed terms and conditions.

ANSWER:     Bayview denies the allegations of this paragraph as alleged as Bayview did not provide Plaintiff with disclosures or terms and conditions of the loan. However, Bayview is informed and belies that Plaintiff was provided with the terms and conditions of the loan in advance of closing and agreed to accept them.

16.     Prior to the actual closing on the Defendant's loan on July 2, 2007, Defendant has not disclosed or even discussed with Plaintiff any pre-payment penalties or "lock out" interest provisions or terms with Plaintiff or any of Plaintiff's agents.

ANSWER:     Bayview admits that it would not have disclosed or discussed with Plaintiff the terms and conditions of the Note and Mortgage but denies that the terms and conditions of the Note and Mortgage were not disclosed or discussed with Plaintiff or his agents, including any "lockout" or "prepayment" terms of the loan.

17.     Defendant has never requested Plaintiff's consent to any pre-payment penalties or "lock out" interest provisions and Plaintiff has not agreed with any such provisions.

ANSWER:     Bayview admits it would not have requested Plaintiff's consent to the terms of the Note and Mortgage but denies that Plaintiff did not agree to the provisions included in the Note and Mortgage including any "lockout" or "prepayment" terms.

18.     Prior to the actual execution of the loan documents at the closing on July 2, 2007, Plaintiff and Defendant had a complete agreement and meeting of the minds based on the terms and conditions offered by Defendant and based on Plaintiff's acceptance of said terms and conditions offered by Defendant and based on Plaintiff's acceptance of said terms and conditions. Any pre-payment penalties or "lock out" interest

provisions have not been a part of the agreement between Plaintiff and Defendant regarding Defendant's loan financing Plaintiff's purchase of the Property located at 6301 W. 73rd Street, Bedford Park IL 60636.

ANSWER:     Bayview denies that Note and Mortgage were executed in its name and therefore denies the allegations as alleged.  Bayview admits that there was a complete agreement between Plaintiff and the loan originator and that the agreement is as set forth in the Note and Mortgage and other loan documents signed by Plaintiff. Bayview denies the remaining allegations of this paragraph.

19.     Based on the terms of the Real Estate contract, Defendant knew that Plaintiff had to close on the purchase of the Property no later than June 18, 2007.

ANSWER:     Bayview denies the allegations of this paragraph as alleged.

20.     Defendant without just reason or cause delayed the approval of the loan until July 2, 2007.

ANSWER:     Bayview denies the allegations of this paragraph as alleged.

21.     Plaintiff was able to secure Seller's consent to postpone the closing numerous times and Seller agreed that the July 2, 2008 would be the final "drop-dead" date.

ANSWER:      Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

**THE CLOSING AND THE EXECUTION OF THE DEFICIENT PROMISSORY NOTE**

22.     On July 2, 2007, Defendant delivered the closing documents and instructions directly to the closing agent - Bell Title Insurance Co. immediately before the closing time close to the end of the business day on July 2, 2007.

ANSWER:     Bayview denies the allegations of this paragraph as alleged.

23.     In a rushed closing on the last day available for Plaintiff to close where hundred of pages of documents were presented for execution, Plaintiff and his attorney have been assured by Defendant that the voluminous closing package presented for Plaintiff's signature contained only those terms and conditions that had been previously discussed and agreed to between Plaintiff and Defendant.

ANSWER:     Bayview denies the allegations that it "assured" Plaintiff or his attorney of anything.  Bayview otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

24.     Plaintiff has materially and reasonably relied on Defendant's assurances that no provisions had been included in the documents presented for execution at the closing except the provisions previously discussed and agreed to between Plaintiff and Defendant.

ANSWER:     Bayview denies the allegations of this paragraph.

25.     On July 2, 2007 at the closing at the Hillside offices of Bell Title Insurance Co., Plaintiff executed the Note and Mortgage attached hereto as Exh. A and B.

ANSWER:     Bayview denies that an Exhibit A or B were attached to the complaint it received.  Bayview is informed and believes that Plaintiff did sign a Note and Mortgage.  Otherwise, Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

26.     When after the closing Plaintiff's counsel reviewed the Promissory Note executed at the closing, the executed version of the Note contained paragraphs 7(a) and 7(b) with "Lockout Period" of 10 years and exuberant prepayment penalties- the penalty amount was equal to the amount of the principal in the event of a prepayment.

ANSWER:     Bayview lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph as it relates to what Plaintiff's counsel may have done. Bayview admits that the Note contained a paragraph 7 (a) that provided for a "Lockout Period" and a paragraph 7 (b) which is titled "Prepayment Period". Bayview otherwise denies the remaining allegations and conclusions of this paragraph.

27.     Under the exigent circumstances of the closing created by Defendant, Plaintiff did not have any knowledge and could not have discovered through reasonable efforts that Defendant inserted in the execution copy of the Note the provisions contained in paragraph 7-"prepayment penalties."

ANSWER:     Bayview denies the allegations of this paragraph including specifically that it created any "exigent circumstances"; that Plaintiff did not or could not have known the terms of the Note and Mortgage; that Bayview inserted anything into the execution copy of the Note; or that Plaintiff has accurately set forth any portion of paragraph 7 of the Note.

28.     Defendant made a mistake in inserting paragraph 7-"prepayment penalty" in the execution copy of the Note- the term that Defendant did not agree to prior to the closing.

ANSWER:    Bayview denies that it inserted anything into the Note or that the insertion of paragraph 7 was a mistake or that the loan originator did not agree to the provisions of the Note or that Plaintiff has accurately set forth any portion of paragraph 7.

29.    Defendant knew at the time of the closing that there was a provision inserted in the execution copy of the Note (paragraph 7-"prepayment penalty") that Defendant did not agree to prior to the closing and would not likely be able to discover under the circumstances of the closing. Defendant did not disclose to Plaintiff the insertion of paragraph 7 in the Note.

ANSWER:    Bayview denies the allegations of this paragraph except that Bayview admits that the Note signed by Plaintiff includes a paragraph or article 7.

## THE NOTE SHOULD BE REFORMED TO REMOVE THE PREPAYMENT PENALTY

30.    Upon discovery of the inclusion of the "lockout provisions" in the Note, Plaintiff's counsel S. Dabrowski promptly contacted Defendant and directed Defendant's attention to the discrepancy but Defendant refused to amend and/or remove said provisions to bring the Note in conformance with the loan terms agreed between Plaintiff and Defendant.

ANSWER:    Bayview denies that any discrepancy was brought to its attention or that the terms of the Note and Mortgage were anything other than as set forth in the Note and Mortgage.  Bayview admits it was contacted by an attorney Dabrowski but denies the remaining allegations as to what Dabrowski said or did.

31.    On October 2007, Defendant issued a payoff letter (Exh. C), where Defendant sough a prepayment penalty in the amount of $ 1, 15, 157.80 where the amount of principal outstanding was only $997,985.76.

ANSWER:    Bayview admits that it provided "pay-off figures" in a letter dated October 24, 2007.  Bayview denies the remaining allegations except that the principal balance set forth in the October 24, 2007 communication was as alleged.

32.    Defendant inserted paragraph 7 in the Note at the last minute by mistake and Plaintiff by mistake executed the Note containing paragraph 7. Neither party discovered said mutual mistake until after the closing.

ANSWER:    Bayview denies it inserted anything into the Note or that any of the provisions of the Note were inserted by mistake.  Bayview denies the remaining allegations.

33.    In the alternative, Defendant inserted paragraph 7 in the Note at the last minute intentionally counting on the Plaintiff would not have sufficient time to discover the provision that was previously agreed or discussed.

ANSWER:    Bayview denies it inserted anything into the Note or that anything was inserted without Plaintiff's knowledge or that Plaintiff had not agreed to the terms of the Note.

34.    Defendant made no effort to bring Plaintiff's attention to the insertion of paragraph 7 where there was no agreement, disclosure or discussion of such provisions between Plaintiff and Defendant.

ANSWER:    Bayview admits it would not have brought anything to Plaintiff's attention but denies the remaining allegations.

11

35.     Plaintiff has no adequate remedy at law because the Plaintiff's interest in the real estate property has been clouded and encumbered by a mortgage not reflecting the terms agreed between Plaintiff and Defendant. Based on the Defendant's payoff, Defendant's purported mortgage encumbers Plaintiff property for double amount of agreed loan amount.

ANSWER:     Bayview denies that Plaintiff is entitled to any remedy and otherwise denies the remaining allegations of this paragraph.

WHEREFORE, Bayview prays for entry of judgment or other relief in its favor and against Plaintiff, including denial of any reformation, and such other relief as this court may deem just and proper, including all fees and costs incurred consistent with the terms of the Note and Mortgage.

## AFFIRMATIVE DEFENSES

### (Failure to state a claim for relief)

1.     Plaintiff has brought an action to reform his Note and Mortgage which he entered into with Metwest Commercial Lenders Inc.

2.     Plaintiff concedes that he signed the Note and Mortgage and that the signed documents contained the terms and provisions he now seeks to exclude.

3.     Plaintiff is presumed to have read and understood the terms of the Note and Mortgage that he signed.

4.     Plaintiff has failed to otherwise allege facts which would demonstrate a basis for reforming the Note and/or Mortgage generally or with regard to the lockout provision prohibiting full or partial repayment during the lockout period and therefore has failed to state a claim for which relief may be proper.

**(Estoppel and Waiver)**

1,    Plaintiff has brought an action seeking to reform his Note and Mortgage which he alleges he entered into with Metwest Commercial Lenders, Inc.

2.    Plaintiff admits he signed the Note and Mortgage which includes the terms and provisions he now complains about.

3.    Plaintiff is estopped to deny that the subject terms and provisions were not part of his agreement as he signed them and accepted the benefit of the Note and Mortgage.

4.    Having executed the Note and Mortgage and accepted the benefits of the loan, Plaintiff is estopped or has waived any claim to reform either the Note or Mortgage generally or specifically as it relates to that term which prohibits full or partial prepayment during the lockout period.

## COUNT II-RESCISSION OF THE NOTE AND MORTGAGE

36.    Plaintiff alleges and incorporates the allegations stated in paragraphs 1 through 35 as if fully stated herein.

ANSWER:    Bayview readopts and realleges its responses to paragraphs 1 through 35 for and as its responses herein as if fully stated herein.

37.    Under the Note as it exists, Plaintiff must pay Defendant a penalty in the amount equal to the outstanding principal to be able to payoff Defendant's mortgage. The enforcement of such egregious penalty should shock the conscious of this Court.

ANSWER:    Bayview denies the allegations and conclusions of this paragraph as alleged.

38.    Forcing Plaintiff to pay double the amount of the principal of the loan when

he prepay the loan ONE YEAR after the closing not only will create grave consequences to Plaintiff-it would simply ruin his life.

ANSWER:    Bayview denies the allegations of this paragraph as alleged.

39.    If this rescinds the Note and the Mortgage, Plaintiff will immediately return to Defendant all funds received at the closing plus closing and processing expenses, thereby restoring Defendant to the status quo existing before the closing.  Moreover, Plaintiff would not seek reimbursement of all interest and payments made by Plaintiff under the loan which would compensate Defendant for interest that could have been potentially earned.

ANSWER:    Bayview denies that Plaintiff has alleged any basis to rescind the Note and Mortgage and otherwise denies the allegations of this paragraph. WHEREFORE, Bayview prays for entry of judgment or other relief in its favor and against Plaintiff, including denial of any rescission, and such other relief as this court may deem just and proper, including all fees and costs incurred consistent with the terms of the Note and Mortgage.


## AFFIRMATIVE DEFENSES

### (Failure to state a claim for relief)

1.    Plaintiff has brought an action to rescind his Note and Mortgage which he entered into with Metwest Commercial Lenders Inc.

2.    Plaintiff concedes that he signed the Note and Mortgage and that the signed documents contained the terms and provisions he now seeks to exclude.

3.      Plaintiff is presumed to have read and understood the terms of the Note and Mortgage that he signed.

4.      Plaintiff has failed to otherwise allege facts which would demonstrate any basis for rescinding the Note and/or Mortgage and therefore has failed to state a claim for which relief may be proper.

### (Contractual Bar)

1,      Plaintiff has brought an action seeking to rescind his Note and Mortgage which he alleges he entered into with Metwest Commercial Lenders, Inc.

2.      The sole basis for rescission is the inclusion of a provision which provides for a "lockout fee" if Plaintiff were to prepay the loan within 10 years.

3.      The terms of the Note and Mortgage specifically preclude the relief requested including rescission of the entire loan agreement on the basis of any one term or provision.

4.      Moreover, under any circumstance, pursuant to the terms of the Note and Mortgage, Plaintiff is otherwise barred from making any partial or full prepayment during the first 10 years of the loan and Defendant cannot be forced to accept partial or full prepayment during the first 10 years. In Illinois, such provisions are fully enforceable and therefore, the holder of the note and mortgage not obligated to accept repayment.

5.      Plaintiff is precluded from rescission of the entire agreement as claimed based on the express terms of his own agreement.

### (Estoppel and Waiver)

1.      Plaintiff has brought an action seeking to rescind the Note and Mortgage which he alleges he entered into with Metwest Commercial Lenders, Inc.

2.      The sole basis for rescission is his claim that he did not seek or agree to the terms of the Note that provide for a "lockout fee" in the event that he were to prepay his loan in violation of the terms of the Note.

3.      In fact, Plaintiff represented that lockout terms and prepayment considerations were to be part of any loan agreement as an inducement for the subject loan.

4.      The provisions at issue were the subject of a bargained for exchange supported by consideration and mutually accepted by Plaintiff and the loan originator.

5.      Plaintiff is estopped to seek rescission generally or with regard to any prohibition of full or partial prepayment during the lockout period as said terms are enforceable and/or Plaintiff has otherwise waived any claim that a lockout fee or prepayment considerations are unconscionable by his own conduct.

## <u>COUNTERCLAIM FOR DECLARATORY OR OTHER RELIEF.</u>

Bayview Loan Servicing, LLC, by its attorneys, seeks relief as follows:

1.      According to Plaintiff, he entered into a commercial loan to purchase real estate to be used for the ongoing operation of a restaurant.

2.      Plaintiff executed a Note and Mortgage which are the subject of these proceedings. A copy of the Note is attached as Exhibit 1.[1]

3.      The Note had a maturity date of twenty (20) years at which time the entire principal balance and all accrued and unpaid interest would be due.

4.      The Note by its terms also included a prohibition on partial or full repayment of the Note during the first 10 years. (¶ 7 (a) Ex. 1) Lockouts or prepayment prohibitions are valid and enforceable for commercial loans in Illinois.

---

[1] The Mortgage is very large and will be separately filed.

5.      The Note also provided that in the event of a prepayment during the lockout period, the Plaintiff would pay the Note holder the amount of interest that the Note holder would have received for the lockout period.

6.      The Note and Mortgage each contain a severability clause.

7.      The terms of the Note and Mortgage were known to the Plaintiff.

8.      Plaintiff now seeks equitable relief in the form of rescission of the entire Note claiming he was not aware of the "lockout fee" associated with a partial or full prepayment during the lockout period.  Plaintiff's claims are controverted.

9.      Plaintiff is not entitled to relief, including rescission, for reasons set forth in response to the complaint; the terms of the Note and Mortgage were known to and negotiated by and on behalf of Plaintiff; the Note and Mortgage contain severability clauses which mitigate against any right to rescission; it would be inequitable to allow Plaintiff to avoid the obligations of his negotiated agreements after accepting the benefit of said Agreements; and/or the Note and Mortgage are otherwise enforceable as executed.

10.      This court should declare the rights and obligations of the parties as follows:

      a.      The lockout provision of the Note is valid and enforceable.

      b.      The lockout fee provisions of the Note is valid and enforceable as set forth therein.

      c.      The Plaintiff is estopped to deny that the foregoing provisions should not be enforced based on the facts surrounding the negotiations of these terms.

      d.      The Plaintiff has waived any rights or defense regarding the foregoing provisions of the Note based on his conduct.

11.     If, and only if the court were to otherwise determine that the "lockout fee" provisions are not enforceable as calculated, then the court may equitably "blue pencil" or modify the scope of the "lockout fee" and enforce said provision as modified so that if the Defendant were to accept a full or partial prepayment it would be properly compensated.

Wherefore, Bayview Loan servicing requests relief as set forth above; all fees and costs incurred in this matter consistent with the terms of the Note and Mortgage; and such other relief as the court may deem proper.

RESPECTFULLY SUBMITTED,
BAYVIEW LOAN SERVICING LLC


s/Michael J. Weik_____
One of its Attorneys



Michael J. Weik  # 3125782
Smith & Weik LLC
10 S. LaSalle Street, Suite 3702
Chicago, IL 60603
312-443-9540

EXHIBIT 1

ADJUSTABLE RATE PROMISSORY NOTE 

{ILLINOIS}

$1,000,000.00

DATE:   July 2, 2007

MATURES:   August 1, 2027

**FOR VALUE RECEIVED**, Anthony Quaranta, as maker, whose address is 482 Clare Ct., Wooddale, IL 60191 (the "Borrower"), hereby unconditionally, jointly and severally (if more than one), promises to pay to the order of Metwest Commercial Lender, Inc., A California Corporation as payee, having an address at 13191 Crossroads Pkwy, N #275, City of Industry, CA 91746 (the "Lender"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of One Million and No/100 Dollars ($1,000,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Promissory Note ("Note") at the Applicable Interest Rate (defined below) in accordance with the terms of this Note.

1. ADJUSTABLE INTEREST. Interest on the unpaid principal balance due hereunder shall accrue at an initial interest rate equal to Eleven And Three Quarters Percent (11.75%) per annum (the "Applicable Interest Rate"). Thereafter the Applicable Interest Rate will be adjusted as follows: on a date which is one hundred twenty (120) months from the first day of the first calendar month preceding the initial Payment Date (defined below), and thereafter on a date six (6) months from the previous change date (each, a "Change Date"), the Applicable Interest Rate will adjust to reflect the then current "Prime Rate" plus Six Percent (6%). The Applicable Interest Rate will not be increased or decreased on the initial Change Date by more than two percent (2%), thereafter the Applicable Interest Rate will not be increased or decreased on any single Change Date by more than one percent (1%). During the term of this Note, the Applicable Interest Rate shall not be lower than the Applicable Interest Rate on the date hereof and shall, provided no Event of Default (defined below) has occurred (in such an event the "Default Rate", as hereinafter defined, will apply), not exceed the Applicable Interest Rate on the date hereof plus six percent (6%). For purposes hereof, the "Prime Rate" shall mean, at any time, the rate of interest quoted in the Wall Street Journal, Money Rates Section as the "Prime Rate" (currently defined as the base rate on corporate loans posted by at least 75% of the nation's thirty largest banks). In the event that the Wall Street Journal quotes more than one rate, or a range of rates as the Prime Rate, then the Prime Rate shall mean the average of the quoted rates. In the event that the Wall Street Journal ceases to publish the Prime Rate, then the Prime Rate shall be the average Prime Rate of the three largest U.S. money center commercial banks, as determined by Lender. Notwithstanding anything to the contrary herein, the Applicable Interest Rate on each Change Date shall be calculated by the Lender based upon the Prime Rate that was in effect on the date which is 45 days prior to said Change Date (or the next subsequent business day if the 45th prior day falls on a holiday or weekend. Interest shall be computed on the actual number of days elapsed and an assumed year of 360 days.

2. PAYMENT TERMS. Borrower agrees to pay sums due under this Note in payments of principal and interest. The initial monthly payment shall be in the amount of Ten Thousand Nine Hundred Fifty-Seven Dollars And Eighty-Seven Cents ($10,957.87). However, monthly payment amounts may change if there is a change in the Applicable Interest Rate. At the time of a change of the Applicable Interest Rate the new monthly payment shall be calculated based upon the principal balance of this Note on the applicable Change Date through the remaining term of the original

2128482

twenty (20) year amortization schedule, and the Applicable Interest Rate then in effect. The first installment of principal and interest shall be due on September 1, 2007, and additional payments shall be due on the 1st day of each calendar month thereafter (each, a "Payment Date"). The entire principal balance and all accrued and unpaid interest thereon shall be due and payable on August 1, 2027 (the "Maturity Date"). Each installment payment shall be applied as follows: (i) first, to the payment of late charges and interest computed at the Default Rate (defined below), if applicable; (ii) second, to the payment of interest at the Applicable Interest Rate; and (iii) third, the balance toward the reduction of the principal balance.

3.   SECURITY. This Note is secured by that certain Mortgage and Security Agreement, Deed of Trust and Security Agreement, or Deed to Secure Debt and Security Agreement, Assignment of Leases and Rents, and Security Agreement and Fixture Filing (the "Security Instrument") of even date herewith given by Borrower to Lender encumbering certain premises located in COOK County, Parish or Judicial District of the Commonwealth or State of ILLINOIS, (the "Real Property") and the Other Security Documents (as defined in the Security Instrument) encumbering other property ("Other Property"), as more particularly described therein (the Real Property and the Other Property are hereinafter collectively referred to as the "Property").

4.   DEFAULT AND ACCELERATION. If any payment required in this Note is not paid (a) prior to the fifth (5th) day after a Payment Date, (b) on the Maturity Date or (c) on the happening of any other default, after the expiration of any applicable notice and grace periods, herein or under the terms of the Security Instrument or any of the Other Security Documents (collectively, an "Event of Default"), and Lender declares an Event of Default, then, at the option of Lender (i) the whole of the principal sum of this Note; (ii) interest, default interest, late charges and other sums, as provided in this Note, the Security Instrument or the Other Security Documents; (iii) all other monies agreed or provided to be paid by Borrower in this Note, the Security Instrument or the Other Security Documents; (iv) all sums advanced pursuant to the Security Instrument to protect and preserve the Property and any lien and security interest created thereby; (v) all sums advanced and costs and expenses incurred by Lender in connection with the Debt (defined below) or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender; (vi) the Prepayment Consideration (defined below), if any; and (vii) any and all additional advances made by Lender to complete Improvements (as defined in the Security Instrument) or to preserve or protect the Property, or for taxes, assessments or insurance premiums, or for the performance of any of Borrower's obligations hereunder or under the Security Instrument and the Other Security Documents (all the sums referred to in (i) through (vii) above shall collectively be referred to as the "Debt") shall without notice become immediately due and payable.

5.   DEFAULT INTEREST. Borrower agrees that upon the occurrence (and Lender's declaration) of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a per annum rate equal to the lesser of (i) ten percent (10%) plus the Applicable Interest Rate, or (ii) the maximum interest rate which Borrower may by law pay (the "Default Rate"), and shall be due and payable ON DEMAND. The Default Rate shall be computed from the occurrence of the Event of Default. Interest calculated at the Default Rate shall be deemed secured by the Security Instrument and the Other Security Documents. Any judgment obtained by Lender against Borrower as to any amounts due under this Note shall also bear interest at the Default Rate. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or

2128482

remedy accruing to Lender by reason of the occurrence of any Event of Default.

6.   LATE CHARGE. If any monthly installment payable under this Note is not paid prior to the fifth (5th) day after the applicable Payment Date, Borrower shall pay to Lender upon demand an amount equal to the lesser of (a) five percent (5%) of such unpaid sum or (b) the maximum amount permitted by applicable law to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment; and this amount shall be secured by the Security Instrument and the Other Security Documents. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.   PREPAYMENT.

   a.   Lockout Period : Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is one hundred twenty (120) months after the date of this Note (the "Lockout Period"). If, for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment"), Borrower shall, simultaneously therewith, be obligated to pay: (i) the aggregate amount of interest which would have accrued on the unpaid principal balance of this Note from the date of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in Section 7(b) below).

   b.   Prepayment Period: At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part, pursuant to the terms contained in this Section 7. If Borrower makes any Prepayment within the first Ten years after the date of this Note (the "Prepayment Period"), the Borrower shall be obligated to pay to Lender the following amounts:

      (i)      an amount equal to five percent (5%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"); and

      (ii)     all accrued interest on the outstanding principal balance to and including date on which the Prepayment is made; and

      (iii)    all other sums due under this Note, the Security Instrument and all Other Security Documents.

   c.   Prepayments Without Consideration: No Prepayment Consideration or Lockout Fee (if any) shall be due or payable with respect to any full or partial Prepayment made by Borrower after the expiration of the Prepayment Period.

   d.   Notice of Prepayment: Prior to making any Prepayment, Borrower must provide Lender with not less than sixty (60) days advance written notice of Borrower's intent to make such Prepayment. Such notice must specify: (i) the date on which Prepayment is to be made, and (ii) the principal amount of such Prepayment. Lender shall not be obligated to accept any Prepayment unless it is accompanied by all other amounts due in connection therewith.

                                                              2128482

e.  Permitted Prepayment Date : Borrower may only make a Prepayment on a regularly scheduled Payment Date (as defined in Section 2 of this Note). Lender shall not be required to accept any Prepayment made on a date other than a regularly scheduled Payment Date. If Borrower submits a Prepayment on any date other than a regularly scheduled Payment Date, then Borrower shall be required to pay all interest that would have accrued through the next scheduled Payment Date.

f.  Insurance/Condemnation Prepayments: Notwithstanding anything to the contrary contained herein, and provided no Event of Default exists, no Prepayment Consideration shall be due in connection with any Prepayment resulting from the application of insurance proceeds or condemnation awards pursuant to the terms of the Security Instrument or changes in tax and debt credit pursuant to the terms of the Security Instrument.

For purposes of this Section 7, the terms "Lockout Prepayment" and "Prepayment" shall include, without limitation, any prepayment of principal that occurs as a result of any Event of Default in any of the Loan Documents or an acceleration of the Maturity Date under any circumstances, any prepayment of principal occurring in connection with foreclosure proceedings or exercise of any applicable power of sale, any statutory right of redemption exercised by Borrower or any other party having a statutory right to redeem or prevent foreclosure, any sale in foreclosure or under exercise of any applicable power of sale, deed in lieu of foreclosure or otherwise, and any other voluntary or involuntary prepayment of principal made by Borrower.

8.  LOAN CHARGES. Borrower agrees to an effective rate of interest that is the rate stated in this Note, plus any additional rate of interest resulting from any other sums, amounts, and charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit or value received or to be received by the holder of this Note, in connection with this Note. Without limiting the foregoing, this Note, the Security Instrument and the Other Security Documents are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, the Security Instrument and the Other Security Documents, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder, and any excess remaining shall be refunded to Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Debt, shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated period until payment in full of the principal (including the period of any renewal or extension hereof) so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. In determining whether or not the interest paid or payable hereunder exceeds the maximum lawful rate, the Lender may utilize any law, rule or regulation in effect from time to time and available to the Lender.

9.  WAIVERS. Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive, to the extent allowed by law, (a) presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices

2128482

of any kind, except for notices expressly provided for in this Note, the Security Instrument or the Other Security Documents and (b) any defense of the statute of limitations in any action hereunder or for the collection of the Debt. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Security Instrument or the Other Security Documents made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note, the Security Instrument or the Other Security Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Security Instrument or the Other Security Documents. If Borrower is a partnership, corporation or limited liability company, the agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising the Borrower, and the term "Borrower," as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners or members, as the case may be, shall not thereby be released from any liability. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in the Security Instrument or any Other Security Document).

10. <u>AUTHORITY</u>. Borrower (and the undersigned representative of Borrower, if any) represents that Borrower has full power, authority and legal right to execute and deliver this Note, the Security Instrument and the Other Security Documents and that this Note, the Security Instrument and the Other Security Documents constitute legal, valid and binding obligations of Borrower, enforceable in accordance with their respective terms.

11. <u>GOVERNING LAW</u>. This Note shall be governed, construed, applied and enforced in accordance with the laws of the State in which the Real Property is located, without regard to principles of conflicts of law.

12. <u>NOTICES</u>. All notices required or permitted hereunder shall be given as provided in the Security Instrument.

13. <u>INCORPORATION BY REFERENCE</u>. All of the terms, covenants and conditions contained in the Security Instrument and the Other Security Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of any conflict in terms, the terms of the Note, Security Instrument and Other Security Documents (in that order) shall control.

14. <u>MISCELLANEOUS</u>.

    a.   To the extent permitted by law, wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement for the expenses of in-house staff, or otherwise. To the extent permitted by law, Borrower shall pay to Lender on demand any and all expenses, including legal expenses and reasonable attorneys fees (at all levels including appeals), incurred or paid by Lender in enforcing this Note, whether or not any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such

2128482

expenses are paid by Borrower.

b.   This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

c.   If Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several.

d.   Whenever used, the singular number shall include the plural, the plural number shall include the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, personal representatives, executors and administrators.

e.   The headings of this Note are for convenience only and are not to affect the construction of or to be taken into account in interpreting the substance of this Note.

f.   Time is of the essence hereunder.

g.   A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and a determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

15. DOCUMENTARY STAMPS. All documentary stamps or taxes required to be affixed hereto have been paid in connection with this Note at the time of recordation of the Security Instrument.

16. FINAL AGREEMENT. This Note, the Security Instrument and the Other Security Documents, represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements. There are no unwritten oral agreements between the parties. All prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged into this Note, the Security Instrument and the Other Security Documents.

17. POWER OF ATTORNEY. To the extent permitted by applicable law, Borrower hereby irrevocably authorizes any attorney at law elected by Lender to appear for it in any action on this Note in any court of record in the State of ILLINOIS or any other state or territory of the United States, or at any time after the indebtedness evidenced by this Note, or any part thereof becomes due (by acceleration or otherwise), to waive the issuance and service of process, and confess a judgment in favor of Lender or any subsequent holder of this Note against Borrower, for the amount that may then be due, together with the costs of suit and interest, and to waive and release all errors and all rights to second trial, appeal, and stay of execution. The foregoing warrant of attorney shall survive any judgment, and if any judgment be vacated for any reason, the holder hereof nevertheless may thereafter use the foregoing warrant of attorney to obtain an additional judgment or judgments against Borrower.

18. WAIVER OF TRIAL BY JURY. BORROWER AND LENDER, BY ITS ACCEPTANCE

2128482

HEREOF, EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THIS NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF ANY PARTY OR ANY OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF THE RIGHT TO TRIAL BY JURY IS A MATERIAL INDUCEMENT TO THE LENDER FOR THE LENDER TO MAKE THE LOAN.

READ ALL CREDIT AGREEMENTS BEFORE SIGNING. THE TERMS OF ALL CREDIT AGREEMENTS SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED OR SPECIFICALLY INCORPORATED BY WRITING IN THIS WRITTEN CREDIT AGREEMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS NOTE ONLY BY OTHER WRITTEN CREDIT AGREEMENTS.

[NO FURTHER TEXT - SIGNATURES APPEAR ON NEXT PAGE]

2128482

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and date first above written.

Signed, sealed and delivered
in the presence of:

Borrower:

Print Name:_____

_____
Anthony Quaranta

Print Name:_____

2128482

ACKNOWLEDGMENT

STATE OF ILLINOIS                        )
                                         )
                                         SS:
COUNTY OF _____              )
          *Cook*

The foregoing instrument was acknowledged before me on July 2, 2007 by Anthony Quaranta.
He/she is personally known to me or produced _*DRIVERS LICENSE*_ as
identification, and did/did not take an oath.

OFFICIAL SEAL
ANTHONY J. MENOLASCINO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-29-2009

Print Name: *Anthony J. Menolascino*
Notary Public, State of *Illinois*
My Commission Expires: *1-29-09*

9                                                                    2128482